IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CT-3226-FL

| WILLIAM C. CARAWAN, JR. | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| GEORGE SOLOMON, BRAD PERRITT, LARRY THOMPSON, MARCUS HOVIS, CORY COLLINS, CLAYTON BREWER, and GEORGE P. NOLAN, | ) | ORDER |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 56), filed pursuant to Federal Rule of Civil Procedure 56. The motion was fully briefed and thus the issues raised are ripe for decision. For the reasons stated below, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

On September 7, 2016, plaintiff, a state inmate proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., alleging defendants failed to accommodate his requests for congregational prayer and "Zakat" charity donation, which are mandated by his Islamic faith. Plaintiff named as defendants Brad Perritt ("Perritt"), the North Carolina Department of Public Safety ("DPS") Superintendent; Larry Thompson ("Thompson"), DPS Assistant Superintendent; Marcus Hovis ("Hovis"), the Tabor Correctional Institution ("Tabor C.I.") chaplain; George Solomon ("Solomon"), DPS Director of Prisons; Cory Collins ("Collins"), Tabor C.I. corrections

officer; Clayton Brewer ("Brewer"), Tabor C.I. corrections officer; and George P. Nolan ("Nolan"), Tabor C.I. Correctional Captain. As relief, plaintiff seeks compensatory and punitive damages, and an injunction mandating that DPS provide plaintiff access to regular congregational prayer and establish a formal Zakat charity donation system at Tabor C.I.

On April 12, 2017, the court conducted its frivolity review of plaintiff's complaint and directed plaintiff to file particularized complaint on the correct form. Plaintiff timely complied by filing amended complaint on May 8, 2017. On May 16, 2017, plaintiff filed motion to appoint counsel. On May 24, 2017, the court conducted its frivolity review of plaintiff's amended complaint, allowed the matter to proceed, and denied plaintiff's motion to appoint counsel. Defendants thereafter filed answer to the amended complaint.

On October 25, 2017, the court entered case management order, which provided February 28, 2018, deadline for completion of discovery. On November 28, 2017, the court granted defendants' request for extension of time to respond to plaintiff's discovery requests, extending such deadline to December 22, 2017. On May 4, 2018, plaintiff filed motion for protective order, requesting stay of all proceeding because defendants allegedly failed to respond to plaintiff's discovery requests. The court denied plaintiff's motion on June 5, 2018, because plaintiff filed it over two months after discovery closed.

On June 28, 2018, defendants filed the instant motion for summary judgment, arguing the undisputed record evidence establishes defendants did not violate plaintiff's rights under RLUIPA or the First Amendment, and that they are entitled to qualified immunity. In support of the motion, defendants filed memorandum of law, statement of material facts, and appendix, which included affidavits of defendants Thompson and Hovis and defendants' responses to plaintiff's

2

interrogatories. Defendant Thompson attached the following exhibits to his affidavit: 1) plaintiff's prison transfer history; 2) the administrative grievances plaintiff filed related to his requests for congregational prayer and establishment of Zakat charity fund; and 3) DPS's responses to the grievances. Defendant Hovis attached the following exhibits to his affidavit: 1) the DPS Religious Practices Resources Guide and Reference Manual ("DPS Religious Practices Manual"); 2) correspondence from DPS regional chaplain Susan Addams to plaintiff addressing plaintiff's requests for congregational prayer and establishment of Zakat charity fund; 3) pertinent excerpts from DPS Policy and Procedure Manual addressing religious services in DPS institutions; 4) the Tabor C.I. Chaplaincy Services/Religious Programs policy; and 5) the Tabor C.I. religious services calendar.

Plaintiff timely filed response opposing defendants' motion and attached as exhibits his declaration and correspondence plaintiff mailed to defendants concerning deficiencies in their discovery responses.

## STATEMENT OF THE FACTS

The court recounts the facts in the light most favorable to plaintiff. On August 18, 2016, DPS transferred plaintiff from Lanesboro Correctional Institution to Tabor C.I. (Thompson Aff. (DE 59-1) ¶ 5). Plaintiff then contacted Tabor C.I. staff and other DPS officials and requested permission to engage in congregational prayer and to pay the Zakat charity, as required by his Islamic faith. (Am. Compl. (DE 17) § V). Plaintiff alleges defendants prevented him "from performing all congregational prayers other than the Friday [Jumu'ah] prayers [and] from paying the Zakat . . . ." (Id.) Plaintiff also alleges, "[w]e as Muslims are commanded by our religious texts to perform salat (prayer) congregationally if there are enough people [and] we are commanded to pay the Zakat if

3

it is within our means." (Id.) In his declaration, plaintiff testified that "it [is] within my beliefs as a Muslim that if there are more than [one] Muslim[s] within an area when the salat (prayer) time comes in . . . that it is obligatory for it to be done in a congregation" and that his fath requires payment of the Zakat if it is "within his means." (Pl.'s Decl. (DE 61-2) ¶¶ 8-9).

The DPS Religious Practices Manual recognizes Islam as an approved religion, and contains a section describing the five pillars of Islam. (Hovis Aff., Ex. A (DE 59-2)). The manual provides that one of the five pillars is prayer and that "[f]ive daily prayers . . . are recommended to be done in congregations, but may be done individually in cells, dormitories, or an available clean area which does not negatively affect the security or management of the institution." (Id. at 7).[1] The Tabor C.I. Chaplaincy Services/Religious Programs policy also addresses congregational prayer:

1. Inmates are allowed to study, pray, conduct devotions, and share their faith with one another in their living areas, as is appropriate.

2. No inmate shall organize or conduct group meetings for the purpose of sponsoring a religious activity in their housing unit. These are unauthorized and are not in accordance with established religious policies at [Tabor C.I.]

(Id., Ex. D § .1404, D).

While the foregoing policy nominally permits inmates to pray "with one another in their living areas," defendant Thompson testified that "any gathering of a number of inmates" seeking to engage in congregational or group prayer must be monitored and supervised by trained correctional officers, qualified religious volunteers, or a qualified inmate faith helper. (Thompson Aff. (DE 59-1) ¶ 10). The Tabor C.I. religious services calendar provides that the only organized (and presumably supervised) congregational services offered to Muslims is the Friday Jumu'ah prayers, and a

---

[1]Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

4

Wednesday "Taleem" educational service. (Hovis Aff., Ex. E (DE 59-2)).

After his transfer to Tabor C.I. plaintiff informally requested permission to engage in congregational prayer on numerous occasions. (Am. Compl. (DE 17) at 11-12). Defendants Hovis (the Tabor C.I. chaplain), Brewer, and Nolan denied plaintiff's requests. (Id.) Defendant Brewer, a corrections officer, informed plaintiff that "policy allows Muslims to pray in [their] cells and . . . that only inmates assigned to the cell are supposed to enter a cell." (Id. at 12). Plaintiff also filed and exhausted at least one grievance concerning defendants' refusal to permit congregational prayer. (Thompson Aff., Ex. C (DE 59-1) at 15-16). Defendants' response to plaintiff's grievance stated that he is allowed to participate in the Friday Jumu'ah congregational prayer, and that the DPS Religious Practices Manual provides that while congregational prayer is preferred, it is not required by the Islamic faith, and therefore plaintiff can pray the remaining daily prayers in his cell. (Id.)

The DPS Religious Practices Manual provides that Zakat is also one of the five pillars of Islam, and defines it as "[m]oney collected for charity and propagation of the faith." (Hovis. Aff., Ex. A (DE 59-2) at 7, 10). The policy further states that "[e]ach facility may permit a local Zakat using the trust fund accounting system." (Id. at 10). During the relevant time period, Tabor C.I. did not offer a formal Zakat charitable giving system but allowed Muslim inmates to donate funds from their trust fund accounts to a local Islamic mosque or other approved charity. (Thompson Aff. (DE 59-1) ¶ 15; Hovis Aff. (DE 59-2) ¶ 9).[2] Plaintiff, however, cannot afford to send money to a local Mosque or Islamic charity due to the administrative charges associated with purchasing a money order. (Pl.'s Decl. (DE 61-2) ¶ 11). If the Zakat system were established at Tabor C.I., plaintiff could purchase a Zakat ticket from the canteen with the limited funds in his account to satisfy the

---

[2]At the time defendants filed the instant motion, DPS officials working to establish a formal Zakat system at Tabor C.I. and some of the required administrative approvals had been obtained. (Hovis Aff. (DE 59-2) ¶ 8).

5

charitable giving pillar. (Id.)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party thus "bears the burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Rule 56(d)

Plaintiff argues the court should deny the instant motion (or stay ruling on it) because he has not had sufficient opportunity to complete discovery. Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to the motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain

affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Rule 56(d) relief is appropriate "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." McCray v. Md. Dep't of Transp., 741 F.3d 480, 483-84 (4th Cir. 2014) (quotation omitted). "[Non-moving parties] do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to." Id. at 484 (citing Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 246 (4th Cir. 2002)).

As set forth above, plaintiff had four months to conduct discovery in this case. And he did not timely request an extension of time to complete discovery during that period.[3] Where plaintiff had the opportunity to obtain discovery regarding his claims but failed to do so, he is not entitled to Rule 56(d) relief. Id.; Harrods, 302 F.3d at 246.

C.     Religious Exercise Claims

Plaintiff alleges defendants violated his rights under RLUIPA and the First Amendment's Free Exercise Clause by prohibiting him from engaging in congregational prayer (except for the Friday Jumu'ah service) and preventing him from paying the Zakat. In relevant part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely

---

[3] Over two months after discovery closed, plaintiff filed motion to compel based on defendants' alleged failure to respond to his discovery requests, which the court denied as untimely. The court also notes that plaintiff received responses to some of his discovery requests. (Defs.' Disc. Resps. (DE 59-3)).

to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of religion. See 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, . . . or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted); see also Holt v. Hobbs, 135 S. Ct. 853, 862 (2015) (holding prisoner established substantial burden under RLUIPA because prison regulation prohibiting half-inch beard "put petitioner to [the] choice" between punishment and violating his religious beliefs).

Once the inmate makes a prima facie showing of substantial burden, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith, 578 F.3d at 250. "'RLUIPA adopts a ... strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted); Smith, 578 F.3d at 252. "However, 'a court should not rubber

8

stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[ ] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190); see also Holt, 135 S. Ct. at 866.

As for the First Amendment, the Free Exercise Clause states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is reasonably related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

Here, defendants' principal argument is that plaintiff cannot establish a substantial burden on religious exercise. Defendants do not argue that plaintiff's requests for congregational prayer and Zakat charitable giving are not religious exercises, that plaintiff's religious beliefs are not sincerely held, or that assuming a substantial burden, their actions can satisfy strict scrutiny under RLUIPA or the First Amendment reasonable relationship standard. As set forth below, the court denies the instant motion as to the congregational prayer claim, grants it as to the Zakat charitable giving claim, and requests additional briefing on whether defendants can satisfy the appropriate level of scrutiny under RLUIPA and the First Amendment.

    1.     Congregational Prayer

Plaintiff's first claim is that his faith requires congregational,[4] or group, prayer and defendants have refused plaintiff's requests for such prayer except during the Friday Jumu'ah service. As noted, DPS policy states that congregational prayer is the preferred form of worship in the Islamic faith. (Hovis Aff., Ex. A (DE 59-2) at 7). When plaintiff requested additional congregational prayer, defendants informed him that DPS policy prohibited him from engaging in such prayer without supervision, and that supervision is only available for the Friday services. (Am. Compl. (DE 17) at 11-12; Pl.'s Decl. (DE 61-2) ¶¶ 5, 7; Thompson Aff. (DE 59-1) ¶ 10 (noting that "any congregational or corporate or group worship must be properly monitored and supervised by properly trained correctional staff, qualified religious volunteers, or a qualified inmate helper")). Additionally, prison officials' responses to plaintiff's grievances state that plaintiff's five daily prayers should be done "in his cell" with the exception of the Friday Jumu'ah services. (Thompson Aff., Ex. C (DE 59-1) at 15-16).

DPS's apparent prohibition on unsupervised congregational prayer substantially burdens plaintiff's religious exercise. Plaintiff is put to the choice of either violating DPS policy by engaging in congregational prayer and face possible disciplinary sanctions, or violating the precepts of his religion. Defendants' actions therefore "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace, 472 F.3d at 187; see also Holt, 135 S. Ct. at 862; Parks-El v. Fleming, 212 F. App'x 245, 247–48 (4th Cir. 2007) (holding Muslim inmate's allegations that defendants prevented him from engaging in congregational prayer were sufficient to allege substantial burden on religious exercise).

Defendants argue the Islamic faith does not strictly require congregational prayer. But that

---

[4]Plaintiff uses the term "congregational" to refer to Islamic group prayer, regardless of whether it is part of a formal religious service.

10

fact, even if true, is not relevant to the substantial burden analysis. 42 U.S.C. § 2000cc-5(7)(A) (defining religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."). Petitioner can establish substantial burden on religious exercise by showing the practice is "important" to the free exercise of his religion. Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir.2004), cert. denied, 545 U.S. 1104 (2005); Parks-El, 212 F. App'x at 247. Plaintiff easily satisfies this burden. The DPS Religious Practices Manual states that congregational prayer is "preferred" and plaintiff has testified that his religious beliefs require congregational prayer. (Hovis Aff., Ex. A (DE 59-2) at 7; Pl.'s Decl. (De 61-2) ¶¶ 5, 7); see also Wilcox v. Brown, No. 1:13-CV-333-FDW, 2019 WL 148712, at *12 (W.D.N.C. Jan. 9, 2012) ("Defendants' blanket conclusion that group worship is not required for Rastafarians pursuant to the [DPS Religious Practices Manual], without inquiring into Plaintiff's religious convictions with regards to group worship, was thus contrary to [the First Amendment].").

Defendants also argue Krieger v. Brown, 496 F. App'x 322 (4th Cir. 2012) compels a different result. In Krieger, the plaintiff brought claims for violations of the First Amendment and RLUIPA after DPS denied his requests for an outdoor worship circle and other religious items purportedly necessary to practice his Asatru religion. Krieger, 496 F. App'x at 322. The Fourth Circuit held the plaintiff had not establish substantial burden on religious exercise because he "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." Id. at 325. As to his requests for various sacred items, the Krieger plaintiff's "blanket assertions" that such items were "necessary" to practice his religion were insufficient to create a triable issue of fact where plaintiff "did not identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs." Id. at 326. Defendants argue

plaintiff has similarly failed to explain how defendants' refusal to accommodate his requests for congregational prayer would violate his religious beliefs. Defendants, citing Krieger, also contend that plaintiff's blanket assertions that congregational prayer is "necessary" are not sufficient to overcome defendants' showing, through the DPS Religious Practices Manual, that congregational prayer is merely "preferred."

This case is distinguishable from Krieger. Plaintiff has testified that congregational prayer is an important part of his practice of Islam, and the DPS Religious Practices Manual and Fourth Circuit case law supports plaintiff's claim. (Hovis Aff., Ex. A (DE 59-2) at 7); Lovelace, 472 F.3d at 187 (holding exclusion of Muslim inmate from congregational prayers during Ramadan satisfied RLUIPA and First Amendment substantial burden test); Parks-El, 212 F. App'x at 247–48. Thus, plaintiff has not "failed to offer any explanation regarding the reasons why" defendants' failure to accommodate his requests for congregational prayer would compromise his religious beliefs. Krieger, 496 F. App'x at 325. And as explained above, defendants' argument that congregational prayer is merely "preferred" and not required by plaintiff's faith is not relevant to the substantial burden analysis. 42 U.S.C. § 2000cc-5(7)(A); Adkins, 393 F.3d at 570. This case also does not involve a religious belief system that "is individualized and lacks any mandatory aspect of [religious] exercise . . . ." See Krieger, 496 F. App'x at 325; (Hovis Aff., Ex. A (DE 59-2) at 7 (describing five pillars of Islam)). Accordingly, Krieger does not control the court's substantial burden analysis.

Defendants also argue the Tabor C.I. Chaplaincy Services/Religious Programs policy permits plaintiff to engage in congregational prayer. The policy provides in relevant part:

1. Inmates are allowed to study, pray, conduct devotions, and share their faith with one another in their living areas, as is appropriate.

> 2. No inmate shall organize or conduct group meetings for the purpose of sponsoring a religious activity in their housing unit. These are unauthorized and are not in accordance with established religious policies at [Tabor C.I.]

(Hovis Aff., Ex. D (DE 59-2) § .1404, D). While the policy nominally may permit inmates to pray "with one another in their living areas," plaintiff has testified that his requests for such group prayer have been denied. (Pl.'s Decl. (DE 61-2) ¶¶ 5, 7). And DPS officials' response to plaintiff's grievance suggests that plaintiff may only conduct his five daily prayers in his cell. (Thompson Aff., Ex. C (DE 59-1) at 15-16). Defendants cannot avoid liability under RLUIPA or the First Amendment by relying on a policy permitting free exercise of religion that is not enforced. See Lovelace, 472 F.3d at 194 (considering whether "defendants applied the [challenged] policy in violation of RLUIPA").

Based on the foregoing, plaintiff has established a triable issue of fact as to the substantial burden element of his congregational prayer claims.[5] As set forth below, however, the court will permit defendants to file additional briefing addressing the RLUIPA strict scrutiny and the First Amendment reasonable relationship standards.

   2.   Zakat Charitable Giving

Plaintiff alleges defendants' refusal to establish a formal Zakat fund places a substantial burden on his exercise of religion. As noted, the term "Zakat" refers to charitable giving, one of the five pillars of Islam. (See Hovis Aff., Ex. A (DE 59-2) at 7). Defendants acknowledge that Tabor

---

[5] Defendants also assert in conclusory fashion that plaintiff has not established defendants intentionally violated his rights under RLUIPA or the First Amendment. See Lovelace, 472 F.3d at 194-95 (holding plaintiff must establish defendants intentionally burdened his exercise of religion to establish liability under RLUIPA or First Amendment). However, where there is no specific argument or citation to case law addressing plaintiff's alleged failure to establish intentional conduct, the court declines to address this issue at this time. Defendants are free to raise this issue in supplemental briefing, as discussed below.

C.I. did not have a formal Zakat fund during the relevant time frame (though efforts are now underway to establish such a fund), but note that DPS policy does not prohibit plaintiff from donating money in his trust fund to a local Muslim charity or mosque. Plaintiff does not dispute that he could pay the Zakat from his trust fund account, but responds that he cannot afford to send money to a local charity or Mosque because he is indigent and cannot afford the administrative fee required to send money outside the institution. Plaintiff asserts that if Tabor C.I. instituted a Zakat program he could afford to pay the Zakat from his trust fund account.

To establish an RLUIPA or First Amendment claim, plaintiff must show that government action has substantially burdened his religious exercise. Hernandez, 490 U.S. at 699; Lovelace, 472 F.3d at 187 (holding that both RLUIPA and First Amendment require showing that government action substantially burdened religious exercise). Where defendants are not preventing plaintiff from paying the Zakat if he has sufficient funds in his trust fund account to do so, plaintiff cannot establish defendants substantially pressured him to violate his religious precepts. Although plaintiff could potentially pay the Zakat if defendants established a Zakat program at Tabor C.I., that circumstance does not mean defendants' conduct has substantially pressured plaintiff to violate his religious beliefs. Plaintiff's limited income is the reason plaintiff cannot pay the Zakat, not defendants' actions. Lovelace, 472 F.3d at 187 (requiring showing that state actor substantially pressured plaintiff to violate his religious beliefs); see also Carawan v. Mitchell, No. 3:16-CV-577-FDW, 2018 WL 1187560, at *4 (W.D.N.C. Mar. 7, 2018) (granting summary judgment on plaintiff's RLUIPA and First Amendment claims related to payment of the Zakat and noting "[c]ertainly if Plaintiff or any other prisoner has insufficient funds to pay for a money order so that he can send funds from the prison to contribute to charity, then he cannot practice Zakat—but

this is not the result of any action or inaction taken by prison administrators."), aff'd, 735 F. App'x 126 (4th Cir. 2018). Accordingly, the court grants defendants' motion for summary judgment on plaintiff's Zakat claims.

C.  Eleventh Amendment and Qualified Immunity

Defendants assert plaintiff's official capacity claims are barred by the Eleventh Amendment to the United States Constitution. An action by a private party to recover money damages from state officials in their official capacity is effectively a suit against the state and, absent a valid waiver, such actions are barred by the Eleventh Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006) (holding Eleventh Amendment immunity applies to RLUIPA claims for monetary damages); Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990). North Carolina has not waived Eleventh Amendment immunity for plaintiff's § 1983 or RLUIPA claims. Accordingly, the court grants defendants' motion to the extent it seeks judgment as a matter of law on defendants' official capacity claims for monetary damages.

Defendants also assert the affirmative defense of qualified immunity as to plaintiff's individual capacity claims for damages. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, plaintiff has established a triable issue of fact on the substantial burden element of his congregational prayer claim, and defendants do not argue they can satisfy the appropriate level of scrutiny under either the First Amendment or RLUIPA. Defendants also do not argue that the right at issue was not clearly established at the time defendants denied plaintiff's requests for congregational prayer. Accordingly, defendants have not established they are entitled to qualified immunity as to the congregational prayer claim. As set forth above, the court will grant the instant motion as it relates to the Zakat claim.

D.   Plaintiff's Requests for Counsel

Plaintiff's response brief also requests appointment of counsel. This request is denied for the reasons set forth in the court's prior orders denying appointment of counsel. (See, e.g., May 24, 2017, order (DE 20)). Plaintiff has not shown that this case is one in which exceptional circumstances merit appointment of counsel.

E.   Renewed Motion for Summary Judgment

As noted, defendants do not address whether they can satisfy strict scrutiny under RLUIPA, the reasonable relationship test under the First Amendment, or whether plaintiff has established the requisite intentional conduct. Under the circumstances, the parties may file renewed motions for summary judgment addressing such issues.[6]

**CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment (DE 56) is GRANTED in part and DENIED in part. The motion is GRANTED as to plaintiff's official capacity claims for monetary damages, and as to plaintiff's First Amendment and RLUIPA claims related to Zakat

---

[6] Defendants should not expect that they will receive permission to file additional dispositive motions in future cases.

charitable giving. The motion is DENIED as to plaintiff's congregational prayer claim. The parties may file renewed motions for summary judgment within **45 days** of entry of this order.

SO ORDERED, this the 18th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge